# EXHIBIT J

# M E M O R A N D U M

**TO:**    JOHN FRIED

**FROM:**  MICHAEL GOLDSTEIN

**RE:**    ERIC SMOKES AND DAVID WARREN
           INDICTMENT NO. 0249/87
           TRANSPORTATION AND ACCOMMODATION FOR WITNESSES

**DATE:**  MAY 20, 1987

---

In am requesting our Office to pay for the expense of the transportation and accommodation of two witnesses in the above-entitled case. One of the witnesses, Dan Melkonian, lives in California. The other witness, Renee Casse, is the widow of the deceased. She is 72 years old and lives in France. I have been in contact with her and her family through their attorney in France. She will only agree to come here if we will also pay for her son or daughter to accompany her for moral support.

Summary of Case

On January 1, 1987, shortly after midnight, Jean Casse, 71 years old and his wife Renee, who were French tourists, were standing on West 52nd Street between 6th and 7th Avenues. A large group of youths came onto West 52nd Street from 7th Avenue. One of them, Eric Smokes, went up to Mr. Casse and punched him in the head with such force that Mr. Casse was flipped onto the sidewalk and landed on his head. The instant Mr. Casse was on the sidewalk, a numer of youths were on top of him. One of them, David Warren, went through the victim's clothing and took his wallet. Restaurant workers from nearby came out to the street and everyone scattered. Mr. Casse was taken to Roosevelt Hospital and was pronounced dead at 9:00 am. His major injuries were a skull fracture, and a fracture of the cervical spine and thyroid cartilage.

The defendants were indicted for Murder in the Second Degree (felony murder), Robbery in the First Degree and Second Degree. Defendant Smokes was also indicted for Manslaughter in the First Degree.

The main witnesses against these defendants are three youths who were at the scene of the incident and identified both defendants in a line-up. These three witnesses testified in the Grand Jury as to the actions of the defendants to varying degrees. Thus one witness saw defendant Smokes walking away from the victim, one saw him take a swing, one saw the blow land. None had a clear view,

nor did any see the victim fall. With respect to defendant Warren, one saw him going through the pockets, one saw him take something, one saw him take what appeared to be a wallet. The Grand Jury testimony, particularly with respect to defendant Warren, however, is contradicted and impeached by prior statements of these witnesses. In some of those statements, they have another individual going through the victim's pockets and two of the three witnesses failed to identify defendant Warren (whom they said they knew) from photographs shown prior to the line-ups. These witnesses all have criminal records and are extremely uncooperative.

An additional witness testified before the Grand Jury under a waiver and pursuant to a cooperation agreement. This witness knows both defendants from having committed numerous robberies with them. In each of these robberies the same method of operation employed in the instant case was used. That is, defendant Smokes would go up to the target and with one punch (or sometimes a yoking action) take the victim down, and then defendant Warren, or the cooperating witness, would go through the victim's pockets.

Mrs. Renee Casse

Mrs. Casse, although most likely unable to make any identifications, is important because she is the only witness who can unequivocally prove that her husband was robbed since he had a wallet and money an him before he was attacked and that it was missing afterwards. In addition, she can provide a strong emotional context to this case.

Dan Melkonian

This witness, who has no connection with any of the parties, was standing about 10 to 20 feet away when Mr. Casse was attacked. This witness who had left New York immediately after the incident and was not present at the line-up has indicated that he might be able to identify the puncher but he is not sure. Nothwithstanding that, however, this witness can vividly describe the action of the puncher, how the punch was delivered where it hit the victim, and how the victim fell, including the sound he made when he hit the ground. This witness provides much more detail as to this than any of the identifying eyewitnesses. This testimony is important particularly with respect to the Manslaughter charge against defendant Smokes.

MG/aw